977 So.2d 983 (2007)
In the Matter of the SUCCESSION OF J. Randolph TEMPLET, Jr.
No. 2007 CA 0067.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
Writ Denied February 1, 2007.
Elizabeth A. Engolio, Plaquemine, LA, for Plaintiffs/Appellees, Claire Templet Whitaker and Mary Jane Templet Pizzolato.
Paul G. Borron, III, Plaquemine, LA, for Defendant/Appellant, Carolyn Robertson Templet.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
In this succession proceeding, the executrix appeals a judgment sustaining a protest to the classification of two items in the *985 Final Account and Proposed Cash Distribution filed by the executrix. For the reasons that follow, we reverse in part and remand.

FACTS AND PROCEDURAL HISTORY
Decedent, J. Randolph Templet, died testate on January 7, 2005. He named his wife, Carolyn Templet, and his three adult daughters as legatees in his will. He bequeathed the family home, automobiles, farm machinery and equipment, as well as one-half of all cash owned by him at the time of his death, to his wife. He left all remaining property owned by him to his three daughters, with one-half of that property subject to a usufruct granted to his wife.
Mrs. Templet was confirmed as the testamentary executrix of decedent's estate and, after due proceedings, filed a Final Account and Proposed Cash Distribution. In response, one of decedent's daughters, Claire Whitaker, filed a petition protesting the classification therein of a check for $19,712.00, payable to decedent, and dated January 7; 2005, as "[c]ash on hand" at the time of decedent's death. She also objected to treating a dividend paid by A. Wilbert's Sons, L.L.C. (Wilbert's) to decedent's estate as the result of the sale of immovable property as a cash dividend, one-half of which belonged to Mrs. Templet.
Following hearing, the district court rendered judgment in favor of Mrs. Whitaker finding the $19,712.00 check did not constitute cash owned by decedent at the time of his death. The court further held the disputed dividend check should be treated as a liquidation dividend rather than a cash dividend, with the naked ownership of one-half belonging to decedent's daughters in full ownership and the naked ownership of the remaining one-half belonging to them, subject to Mrs. Templet's usufruct. Mrs, Templet now appeals, raising two assignments of error.

CLASSIFICATION OF CHECK
Mrs. Templet contends the district court erred in refusing to treat the $19,712.00 check as cash owned by decedent at the time of his death.
The check in question was issued to decedent as payment of a shareholder dividend declared by Wilbert's Board of Directors at its December 12, 2004 meeting. The check was dated January 7.2005, the date the board had declared the dividend to be payable. Nevertheless, John M. Higdon, Wilbert's president and chairman of the board, indicated it was Wilbert's longstanding practice to allow those shareholders who wished to do so to pick up their dividend checks on the day before the payable date of the check after 2:00 p.m., the time when the banks changed their transaction date. He testified that several shareholders, including decedent, customarily did so.
Mrs. Templet picked up decedent's check sometime after 2:00 p.m. on January 6, 2005; she had authority to do so under a general power of attorney previously granted to her by decedent. According to Mrs. Templet, she stamped the check with the "for deposit" stamp she normally used and prepared a deposit slip for it that night. The decedent died at 6:55 a.m. on the following morning, January 7, 2005. At Mrs. Templet's request, a family friend deposited the check into the Templets' joint checking account at 8:52 a.m. on January 7, 2005.
In the final accounting she filed, Templet classified the $19,712.00 check as cash owned by decedent at the time of his death, one-half of which she was entitled to *986 in full ownership under the following provision of decedent's will:
I now bequeath to my wife, Carolyn Robertson Templet, the following:
* * *
4. One-half of all cash owned by me at the time of my death, including bank account or accounts and certificate or certificates of indebtedness, or in any other form. (Emphasis added.)
In contesting Templet's classification of the check, Whitaker argues that, even though the check was in the executrix's possession prior to decedent's death, the facts that the check was not payable until January 7, 2005 and that decedent died prior to the opening of business on that date precludes the check from being considered as "cash on hand" at the time of his death. The district court accepted this argument for the following reasons:
In considering the status of the $19,712.00 check from A. Wilbert's Sons Lumber and Shingle Co. (Wilbert's Co.) received, on January 6, 2005 and dated January 7, 2005 the court relies strongly on the testimony of J. Higdon. Mr. Higdon is the president of Wilbert's Co. He testified that Wilbert's Co. had declared a dividend on December 12, 2004, not to be payable until January 7, 2005. As a courtesy to some owners, they were given their dividend checks after the banks closed on January 6, 2005. The checks were dated January 7, 2005. Wilbert's Co. did not intend the money to leave their account until January 7, 2005. The decedent's widow had his power of attorney and had his full authority to receive the check on January 6th. However that power of attorney ceased to exist at 6:55 a.m. on January 7th when it was stipulated that the decedent died. The check was not deposited until after the bank opened at 8:52 a.m. Wilbert's did not intend the cash to leave its account until normal business hours on January 7th. This is reinforced by Mr. Higdon's testimony that he did not give anyone any checks on January 6th until after 2:00 p.m. when the banks close their accounts. The banks were not open for normal business at 6:55 a.m. when the decedent died. Therefore the check for $19,712.00 could not be considered cash on hand at the time of death.
In interpreting a will, the function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will. Succession of Mydland, 94-0501, p. 5 (La. App. 1st Cir.3/3/95), 653 So.2d 8, 11. In fact, the intent of the testator is the paramount consideration in interpreting the provisions of a will. La. C.C. art. 1611 A; Matter of Succession of Williams, 608 So.2d 973, 975 (La.11/30/92). The first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is assumed to be conveying his ideas to the best of his ability so as to be correctly understood at first view. See Mydland, 94-0501 at p. 5, 653 So.2d at 12. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Williams, 608 So.2d at 975; Mydland, 94-0501 at p. 5, 653 So.2d at 12.
Applying these principles to the will sub judice, we find the district court erred in concluding the check in question should not be considered cash owned by decedent at the time of his death within the contemplation of the will. The district court primarily based its decision on its conclusions: (1) that Mrs. Templet had no authority to deposit the check since her power of attorney ceased upon decedent's *987 death; and (2) Wilbert's did not intend for the dividend check to be cashed or deposited until normal business hours on January 7, 2005. However, in focusing on Mrs. Templet's authority to deposit the check and on Wilbert's intent, the court lost sight of the paramount consideration in interpreting a will, that is, the testator's intent.
The pertinent bequest to Mrs. Templet was for one-half of all cash owned by decedent at the time of his death, including all bank accounts and certificates of deposit, "or in any other form". In Secession of Mulqueeny, 248 La. 659, 668-69, 181 So.2d 384, 387 (1965), the Louisiana Supreme Court made it clear that the term "cash" encompasses more than merely physical currency, stating that:
[T]he reference to `cash' in the legacies to the . . . [legatees] does not necessarily require that those legacies be satisfied strictly from physical currency, coin or specie, but `cash' in that sense could contemplate the satisfaction of the legacies from demand deposits, or choses in action represented by a bank or other account when the funds represented thereby are subject to ready withdrawal.
Likewise, Black's Law Dictionary defines "cash" as: (1) "Money or its equivalent" and (2) "Currency or coins, negotiable checks, and balances in bank accounts." Black's Law Dictionary 208 (7th ed.1999). (Emphasis added.) Further, in several instances of various contexts, the courts of this state have equated personal checks to cash or money.[1]
Most importantly, the language utilized by decedent clearly indicates he did not intend the term "cash" to be limited to physical currency or even to money in bank accounts, since he also referred specifically to certificates of indebtedness and cash "in any other form". We note in particular that he used the phrase "in any other form" without limitation. Accordingly, in view of the decedent's obvious intent that the term "cash" be broadly construed, we conclude the proper interpretation of the language of his will is that a negotiable check in his possession at the time of his death should be considered cash owned by him at the time of his death within the contemplation of the will. That portion of the district court judgment holding to the contrary is reversed.

CLASSIFICATION OF DIVIDEND
Mrs. Templet also contends the district court erred in classifying a dividend paid by Wilbert's to decedent's estate in March 2006, in the amount of $65,846.58, as a liquidation dividend rather than as a cash dividend. This classification is crucial in determining ownership of the dividend since Louisiana Civil Code art. 552 provides, in pertinent part, as follows:
A cash dividend declared during the existence of the usufruct belongs to the usufructuary. A liquidation dividend or a stock redemption payment belongs to the naked owner subject to the usufruct.
Stock dividends and stock splits declared during the existence of the usufruct *988 belong to the naked owner subject to the usufruct.
At trial, Mr. Higdon explained that the $65,846.58 dividend was the first of five annual dividends in that amount to be paid by Wilbert's to decedent's estate. Wilbert's declared the dividends after it sold approximately 1,300 acres of property it owned, which was known as Evergreen Plantation and previously had been used to grow sugarcane, for $24,400,000. Wilbert's spent $7,000,000 of the sale proceeds to purchase approximately 3,900 acres of timberland in Mississippi, and elected to distribute the remaining proceeds to its shareholders in five annual installments. Mr. Higdon testified specifically that Wilbert's was not in liquidation and had no plans to go into liquidation. Nor was there any indication that Wilbert's operations were being curtailed or restricted in any manner.
In concluding the dividend should be treated as a liquidation dividend under La. C.C. art. 552, the district court acknowledged that Wilbert's was "not liquidating in the normal sense of the meaning" of that term. Nevertheless, the court felt the dividend qualified as a liquidation dividend since the sale of Evergreen "resulted in a partial liquidation of substantial assets of Wilbert's LLC."
On appeal, Mrs. Templet argues the dividend cannot be considered a liquidation dividend because Wilbert's was not in the process of being liquidated. In opposition, Mrs. Whitaker contends the disputed dividend was a payment made by Wilbert's from capital rather than earnings. Thus, she maintains the payment should be treated as a liquidation dividend because it was derived from the liquidation into cash of a substantial asset of Wilbert's, resulting in a substantial decrease in its book value.
Black's Law Dictionary defines a "cash dividend" as "[a] dividend paid to shareholders in the form of money." Black's Law Dictionary 492 (7th ed.1999). It defines the term "liquidation dividend" as "[a] dividend paid to a dissolving corporation's shareholders, usually from the capital of the corporation, upon the decision to suspend all or part of its business operations." Black's Law Dictionary 492 (7th ed.1999). Louisiana law authorizes the payment of two types of liquidating dividends: (1) a distribution in liquidation of an LLC; and (2) a distribution in liquidation of a member's interest. Susan Kalinka, 9 Louisiana Civil Law Treatise, Limited Liability Companies and Partnerships § 1.21, 58 (West 2001). See also La. R.S. 12:1325 and 1337.
The dividend at issue in this case does not qualify as either of these two types of liquidation dividend. It did not represent a distribution in payment for liquidation of a member's interest in Wilbert's; nor can it be considered a distribution in liquidation of an LLC, since Wilbert's itself is not being liquidated in whole or in part. In fact, there was no indication that Wilbert's business activities were being suspended, restricted or curtailed in any matter. Although Wilbert's board elected to sell Evergreen Plantation, a substantial asset consisting of approximately 1,300 acres, Mr. Higdon explained that Wilbert's used a portion of the sale proceeds to acquire three times as much property in Mississippi as it sold. Moreover, he indicated that the newly acquired Mississippi timberland should over time generate revenues well over what was made growing sugarcane on Evergreen. The record reflects that Wilbert's was actively engaged in various business activities including oil and gas production, timber, agriculture, residential development, and wetlands mitigation, with total land holdings consisting of at least 120,000 acres. It clearly was not in *989 liquidation. Under these circumstances, the district court erred in classifying the $65,846.58 cash dividend paid to decedent's estate as a liquidation dividend, and that portion of the judgment so holding is also reversed.

CONCLUSION
For the above reasons, the portion of the district court judgment holding the $19,712.00 check did not, within the contemplation of decedent's will, constitute cash owned by the decedent at the time of his death is hereby reversed. Further, the portion of the district court judgment holding the $65,846.58 dividend paid by Wilbert's to decedent's estate in March 2006 was a liquidation dividend, rather than a cash dividend, is also hereby reversed. This matter is remanded to the district court for further proceedings consistent with this opinion. The costs of this appeal are to be paid by appellees.
REVERSED IN PART; AND REMANDED.
NOTES
[1] See State v. Dean, 99-475, p. 6 (La.App. 3rd Cir. 11/3/99), 748 So.2d 57, 60, writ denied. 99-3413 (La.5/26/00), 762 So.2d 1101 (statutory language "cash, and other cash equivalents used in gaming" included checks and other forms of negotiable instruments); Capital Building and Loan Association v. Nicholas, 330 So.2d 364, 365 (La.App. 4th Cir. 1976) (a personal check met the requirement that cash payment be made for property sold at a sheriff's auction); Menard v. Muhs, 196 So.2d 536, 538 (La.App. 4th Cir.), writ refused, 250 La. 744, 199 So.2d 181 (1967) (a check "represents money and to all practical intents is money . . . the check being the means or vehicle of delivery"); Bates-Crumley Chevrolet Co., Inc. v. Brown, 141 So. 436, 439 (La.App. 2d Cir. 1932) ("[a] check represents money and is merely the vehicle or means of delivery of the money.").