# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2022 CA 0638

### SUCCESSION OF ARTHUR ANDREW ARSENEAUX, JR.

Judgment Rendered: **DEC 2 9 2022**

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2015-30516
Honorable Reginald T. Badeaux, III, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Elisabeth W. Ramirez<br>Covington, Louisiana | Counsel for Plaintiff/Appellee<br>Lucille B. Arseneaux |
| Steven F. Griffith, Sr.<br>Destrehan, Louisiana | Counsel for Defendant/Appellant<br>John Philip Arseneaux |

\* \* \* \* \* \*

BEFORE: McDONALD, McCLENDON, AND HOLDRIDGE, JJ.

**McCLENDON, J.**

In this succession case, the plaintiff appeals a trial court judgment that dismissed his case with prejudice pursuant to an involuntary dismissal. For the following reasons, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Arthur Andrew Arseneaux, Jr. (Arthur, Jr.), and Lucille Boudreaux Arseneaux (Lucille) were married on August 14, 1999, and lived together as husband and wife until Arthur, Jr.'s death on May 13, 2015. Arthur, Jr. had three children born of an earlier marriage, namely, Arthur A. Arseneaux, III (Arthur, III), John Philip Arceneaux (John), and Joanna Marie Sperandeo (Joanna).[1]

On July 2, 2015, Lucille filed a Petition to Probate the Statutory Will and Petition for Possession regarding the will and estate of her late husband. The statutory testament, dated October 8, 2003, included the following provision:

> I give and bequeath all my current assets including, but not limited to cash, savings accounts, certificates of deposit, checking accounts, etc., to my beloved wife, **LUCILLE B. ARSENEAUX.**

Special bequests were made to Arthur, Jr.'s three adult children, and the testament then provided:

> I give and bequeath the usufruct over the rest and remainder of my estate to my beloved wife, **LUCILLE B. ARSENEAUX,** until her death or [remarriage].

> I give and bequeath the ownership of [the] rest and remainder of my estate to my beloved children, **ARTHUR A. ARSENEAUX, III, JOHN PHILIP ARSENEAUX and JOANNA MARIE SPERANDEO,** in equal portions.

In her petition, Lucille asserted that she was the sole heir and legatee of all the property belonging to her husband's estate, with the exception of the special bequests to Arthur, Jr.'s children. Lucille alleged that she sought ownership of an undivided one-half interest in the community property in existence at the time of Arthur, Jr.'s death, as well as ownership of the one-half interest in Arthur, Jr.'s ownership of community property at the time of his death based on the provisions of his testament.

---

[1] Arthur, Jr.'s children are all adults over the age of twenty-three. See LSA-C.C. arts 1493-1495.

2

On July 8, 2015, the trial court signed a Judgment of Possession, wherein Lucille was recognized as the surviving spouse of Arthur, Jr. and was placed in possession of an undivided one-half interest of all the property belonging to the community of acquets and gains existing between Arthur, Jr. and Lucille. Further, Lucille was recognized as the sole heir of Arthur, Jr. pursuant to the terms of Arthur, Jr.'s Last Will and Testament and, as such, was sent into possession of all the property belonging to Arthur, Jr. at the time of his death, including immovable property located in Bayou Bonfouca Estates in Slidell, Louisiana.[2]

On July 7, 2020, John filed a Petition to Appoint Administrator, to Recognize Petitioner as a Legal Heir of Decedent, for a Judgment to Order Surviving Spouse to Return Assets of the Succession That Were Improperly Taken and for Other Relief against Lucille.[3] John asserted that Lucille's allegations in the Petition for Possession were false and fraudulent statements. Particularly, he alleged that Lucille's statement that a community of acquets and gains existed between herself and Arthur, Jr. constituted fraud, as Lucille and Arthur, Jr. previously executed a matrimonial agreement on August 9, 1999, to remain separate in property. According to John, Lucille falsely represented that the Slidell immovable property was community property. He asserted that the property, also known as the camp, was his father's separate property acquired from Arthur, Jr.'s mother by a Judgment of Possession on May 11, 2015, as part of his mother's succession. John further alleged that his father's testament, dated October 8, 2003, clearly provided that Lucille was only to receive the "current assets" owned by Arthur, Jr. at the time of the execution of the testament on October 8, 2003. Therefore, John requested a judgment declaring that he and his siblings be declared the true and lawful owners of the camp and that the proceeds from the sale of the property by Lucille on July 29, 2015, in the amount of $108,000.00, be returned to Arthur, Jr.'s succession.

---

[2] Lucille was also placed in possession of two burial plots at St. Joseph's Abbey Cemetery in Covington, Louisiana, an undivided one-half interest in a mobile home, and a 2001 Nissan Sentra.

[3] The petition was originally filed in the name of Arthur, III, but on July 10, 2020, John filed an Amended Petition stating that an error was made in the correct name of petitioner, and the original petition was amended to change the name of petitioner to John.

Lucille answered John's petition on November 19, 2020, admitting that the allegations in her petition for possession were incorrect, stating that she did not remember that she had executed a matrimonial agreement prior to her marriage to Arthur, Jr. and that the statements were not made intentionally to deceive the court, but rather were the result of a lack of recollection. Lucille also stated that after the execution of the matrimonial agreement, there were no discussions between herself and Arthur, Jr. that would cause her to recall the existence of the matrimonial agreement sixteen years later. Lucille further argued that she acquired a 100% ownership interest in the camp by virtue of the Last Will and Testament of Arthur, Jr. and that, even accepting John's interpretation of the testament, Arthur, Jr.'s mother, Anna Boudreaux Arseneaux, sold the camp to Arthur, Jr. by act of sale on May 31, 1996, thereby making the camp part of Arthur, Jr.'s "current assets" in 2003 when the testament was executed. However, John argues that the Cash Deed from Arthur, Jr.'s mother was null and void, as well as fraudulent, as the act lacked any consideration, no cash was received, and the act was deficient in form.

The trial court set the matter for trial on October 27, 2021. The parties agreed to the introduction into evidence of certain documents, including the August 9, 1999 matrimonial agreement; the May 31, 1996 Cash Deed in which Anna Boudreaux Arseneaux sold to Arthur Jr. all of her right, title, and interest in the Slidell property; the October 8, 2003 Last Will and Testament of Arthur, Jr.; the May 11, 2015 Judgment of Possession in the Succession of Anna Boudreaux Arseneaux putting Arthur, Jr. in possession of the Slidell property; and the July 29, 2015 cash sale of the Slidell property by Lucille to a third party. Lucille and John also testified.

At the conclusion of John's case, Lucille made an oral motion for involuntary dismissal. The trial court determined that John had shown no right to relief and granted the involuntary dismissal. Accordingly, the trial court concluded that the judgment of possession originally signed by the court in 2015 remained in full force and effect.

On December 8, 2021, the trial court signed its judgment, dismissing with prejudice John's petition at his costs. John appealed.

4

## DISCUSSION

Louisiana Code of Civil Procedure article 1672(B) provides:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Thus, Article 1672(B) provides the basis for an involuntary dismissal at the close of a plaintiff's case in a bench trial, when a plaintiff has shown no right to relief based on the facts and law. In determining whether involuntary dismissal should be granted, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish a claim by a preponderance of the evidence, which means taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. **In re Fogg**, 2019-0719 (La.App. 1 Cir. 2/21/20), 298 So.3d 291, 293, writ denied, 2020-00819 (La. 10/14/20), 302 So.3d 1124. When considering a motion for involuntary dismissal, a plaintiff is entitled to no special inferences in his favor. However, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. **In re Fogg**, 298 So.3d at 293-94.

The trial court's grant of an involuntary dismissal is subject to the manifest error standard of review. **Broussard v. Voorhies**, 2006-2306 (La.App. 1 Cir. 9/19/07), 970 So.2d 1038, 1041, writ denied, 2007-2052 (La. 12/14/07), 970 So.2d 535. Accordingly, in order to reverse the trial court's grant of involuntary dismissal, we must find that there is no factual basis for the trial court's finding or that the finding is clearly wrong. **Broussard**, 970 So.2d at 1042.

In interpreting a testament, the function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the testament. **In re Succession of Templet**, 2007-0067 (La.App. 1 Cir. 11/2/07), 977 So.2d 983, 986, writ denied, 2007-2329 (La. 2/1/08), 976 So.2d 720. In fact, as provided

5

in LSA-C.C. art. 1611(A), the intent of the testator is the paramount consideration in interpreting the provisions of a testament:

> The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator's intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.

Also, the preference of interpretation is the one that gives effect. LSA-C.C. art. 1612. "[T]he first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be conveying his ideas to the best of his ability so as to be correctly understood at first view." **Carter v. Succession of Carter**, 332 So.2d 439, 442 (La. 1976). When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. **Templet**, 977 So.2d at 986.

However, if two possibilities present themselves, the document must be read to carry out the "wishes" of the testator, not defeat them. **In re Succession of White**, 2006-1002 (La.App. 1 Cir. 5/4/07), 961 So.2d 439, 441. Therefore, when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator. **Succession of Williams**, 608 So.2d 973, 975 (La. 1992). Extrinsic evidence may be used to determine what the words of the testator, as written, actually mean. That evidence must be used only to resolve ambiguity. **In re Succession of Vullo**, 2012-0822 (La.App. 1 Cir. 12/21/12), 2012 WL 6681711, *4. On the issue of ambiguity, the determination of ambiguity is a question of law. Appellate review of questions of law is simply review of whether the trial court was legally correct or legally incorrect. **Id.**

In his appeal, John argues that the testament, although somewhat unusual, was very precise and clear in that Lucille was only to receive the current assets that were owned by his father at the time of the execution of the testament on October 8, 2003. Further, John contends, Lucille was to enjoy only the usufruct over the post-2003 acquired assets by Arthur, Jr., which included the camp Arthur, Jr. inherited in 2015. On

6

the other hand, Lucille contends that the language in the testament provided that she would receive all property owned by Arthur, Jr. at the time of his death, with the exception of the special bequests to his children.

In reviewing the testament, the trial court found that it was Arthur, Jr.'s intention to give all of the assets he possessed at the time of his death to Lucille.[4] However, from our reading, we do not find Arthur, Jr.'s intention regarding the disposition of his property to be clear based on the language of his testament. Additionally, we do not find the trial court's interpretation of the testament to be the only possible interpretation. John presented at least one interpretation upon which relief could be granted.[5] Therefore, Lucille should have been given the opportunity to present evidence.

Accordingly, we find that the trial court improperly granted the involuntary dismissal, which prevented the introduction of "competent evidence" under LSA-C.C. art. 1611(A) to aid in finding the intent of the testator when having his testament drafted. Having so found, we reverse the judgment of the trial court, and we remand this matter for further proceedings consistent with this opinion.

## CONCLUSION

For the above reasons, we reverse the trial court judgment in favor of Lucille B. Arseneaux and against John Philip Arseneaux dismissing his petition with prejudice and remand the matter for further proceedings consistent with this opinion. The costs of this appeal are to be paid by Lucille B. Arseneaux.

**REVERSED AND REMANDED.**

---

[4] In its oral reasons, the trial court stated:

> I think it's clear from paragraph two [of the testament, Arthur, Jr.'s] intention was to give all of his assets – all of his assets he died possessed of at the time of his death to his beloved wife, Lucille Arseneaux.

> There are no exceptions in there. There's an apparent contradiction down there but I blame that on the notary because it just leads to confusion. But I don't think that it's such an error that it would invalidate the entire will. And I think that was the intention of Mr. Arseneaux.

[5] Even were we to interpret the testament to mean that Arthur, Jr. meant to dispose of the "current assets" that he owned in 2003, John presented evidence that created issues as to nullity regarding the 1996 sale. If Arthur, Jr. acquired ownership in 1996, the camp was clearly a current asset in 2003 and bequeathed to Lucille. However, if Arthur, Jr. obtained ownership by virtue of the judgment of possession in his mother's succession on May 11, 2015, then the camp was not a current asset in 2003, and Lucille would not be the sole heir.

7