# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2022 CA 0863

SUCCESSIONS OF JOYCE FAYE MILLET A/K/A
JOYCE LEBLANC MILLET, WIFE OF/AND
LEONCE JOSEPH MILLET, JR.

consolidated with

### 2022 CA 0864

JILL MILLET

VERSUS

ECONOMY BRICK SALES, INC.

Judgment Rendered: **JUL 0 5 2023**

* * * * * *

On Appeal from the Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Docket No. 18543 c/w 126239
Honorable Jason Verdigets, Judge Presiding

* * * * * *

Barbara Irwin
Timothy E. Pujol
Ashley D. Tadda
Gonzales, Louisiana

Counsel for Plaintiff/Appellant
Jill Millet


Courtney C. Miller
Robin B. Cheatham
Richard B. Eason, II
New Orleans, Louisiana

Counsel for Defendants/Appellees
Dean J. Millet, Michelle Millet DePierri and
Economy Brick Sales, Inc.


* * * * * *

**BEFORE:  McCLENDON, WELCH, CHUTZ, HESTER, AND GREENE, JJ.**

Welch, J. concurs.

W RC by PMC Chutz, J. Concurs.

CHH by PMC Hester, J. Concurs.

**McCLENDON, J.**

In this succession proceeding and consolidated suit for breach of a lease agreement, the plaintiff, one of the decedents' daughters, appeals the trial court's judgment that granted summary judgment in favor of the defendants, denied her cross motion for summary judgment, and dismissed her claims with prejudice. For the reasons that follow, we reverse, render, and remand.

## FACTS AND PROCEDURAL HISTORY

The pertinent facts in this matter are largely undisputed. On January 2, 2004, Leonce J. Millet, Jr. and his wife, Joyce LeBlanc Millet, entered into a Lease Agreement, as lessors, with Economy Brick Sales, Inc. (Economy Brick), as the lessee, regarding certain immovable property (the immovable property) located in Ascension Parish, Louisiana. The Lease Agreement was signed by both lessors and by Dean Millet and Michelle Millet DePierri in their capacities as President and Secretary-Treasurer, respectively, of Economy Brick. Leonce and Joyce were the original owners of Economy Brick, but before the execution of the lease, they had donated all of the shares of the capital stock in Economy Brick to two of their children, Dean and Michelle. The rental payments from Economy Brick were designed to be retirement benefits for Leonce and Joyce. The lease, recorded in the conveyance records of Ascension Parish, set forth a monthly rental payment of $7,000.00 for a term of fifty years. The Lease Agreement also provided that the term of the lease was to "be reduced to the remainder of twenty (20) years commencing upon the deaths of both Lessors" at which time the monthly rental was to be paid, as follows:

> Upon the occurrence of the death of both Lessors, the monthly rental will be reduced to 1.30% of the monthly sales not to exceed a maximum monthly installment of $4,000.00 payable in equal monthly installments to [Ronda] Millet Matthews, Aleta Millet Morgan, Jill Millet and Paula Millet LeBlanc on the first day of each month.

Joyce died testate on February 27, 2013. In her January 27, 2009 Last Will and Testament, Joyce bequeathed to Leonce, *inter alia*, all of her right, title and interest in and to the immovable property. After Joyce's death, Leonce executed his Last Will and Testament on August 22, 2013. Therein, various bequests were made to their children,

2

Dean J. Millet, Michelle Millet DePierri, Ronda Millet Matthews, Aleta Millet, Jill Millet, and Paula Millet LeBlanc.

Leonce died on June 11, 2018. Among his bequests in his Last Will and Testament, Leonce bequeathed to Dean and Michelle all of his right, title, and interest in and to the immovable property. Article II of the testament also acknowledged that the immovable property was subject to the Lease Agreement and provided, in pertinent part:

> I further transfer, convey, and assign to [Dean and Michelle] all of my rights and obligations in, to, and under said Lease, including but not limited to the power to amend or terminate said Lease on behalf of the Lessor. It is my desire and I hereby instruct [Dean and Michelle] to consider termination of said Lease upon my death.

Subsequent to the death of Leonce, Dean and Michelle filed a Petition to Open Successions, Probate Wills and for Appointment of Independent Co-Executors and were appointed co-executors for the Successions of Joyce Faye Millet a/k/a Joyce LeBlanc Millet, wife of/and Leonce Joseph Millet, Jr., Docket No. 18543, in the 23rd Judicial District Court for the Parish of Ascension (the succession proceeding). On October 16, 2018, Jill made a formal proof of claim in the succession proceeding, directed to the co-executors, contending that lease payments were owed to her under the Lease Agreement.[1] The co-executors rejected Jill's claim.

On July 25, 2019, Jill filed a Petition for Judicial Enforcement of Claim in the succession proceeding, seeking to enforce the terms of the Lease Agreement and to obtain lease payments owed to her. Shortly thereafter, on July 29, 2019, Jill filed a Petition of Breach of Contract and Damages in a separate lawsuit against Economy Brick and Dean. Subsequently, the second suit was consolidated with the succession proceeding.

Meanwhile, on June 26, 2019, the trial court signed a Judgment of Partial Possession in the succession proceeding, and Dean and Michelle were placed in possession and recognized as the owners of the immovable property. Thereafter, on August 9, 2019, Dean and Michelle, as the lessor, and Economy Brick, represented by Dean, as the lessee, agreed to terminate the lease and executed an Act of Cancellation

---

[1] Louisiana Civil Code article 1981 provides, in pertinent part, that the "stipulation gives the third party beneficiary the right to demand performance from the promisor."

3

of Lease Agreement. The parties to the Act of Cancellation stated that the effective date of the cancellation was June 12, 2018, and that, as of the effective date, "the Lease and any and all underlying rights, duties, and obligations under the Lease have been terminated, and shall no longer have any force and effect" and that the "Lessor and Lessee further waive, renounce, relinquish and release any and all rights and privileges under the Lease or any other underlying lease agreements as of the Effective Date."[2]

On March 23, 2020, Dean and Michelle, in their capacity as defendant co-executors in the succession proceeding, and Economy Brick and Dean, as defendants in the breach of contract suit, filed a motion for summary judgment, seeking to dismiss all of Jill's claims against them. After a hearing, the trial court granted the motion for summary judgment and dismissed all of Jill's claims in both the succession proceeding and the suit for breach of contract. Jill appealed that decision to this Court. Another panel of this Court determined that the trial court erred in considering documents attached to the defendants' reply memorandum. As a result, and after considering only the valid summary judgment evidence submitted by the defendants, this Court found the summary judgment improper, reversed the trial court's judgment, and remanded the matter for further proceedings. See **Successions of Millet**, 2021-0355 (La.App. 1 Cir. 12/22/21), 340 So.3d 252.

Thereafter, on February 7, 2022, Dean and Michelle, in their capacity as co-executors in the succession proceeding, as well as Economy Brick and Dean, filed another motion for summary judgment, seeking dismissal of all of Jill's claims in both lawsuits. According to the defendants, Leonce expressed his clear intent in his Last Will and Testament that upon his death the immovable property would be transferred to Dean and Michelle and the lease would be terminated. Further, the defendants argued that the expressed intent by Leonce in his Last Will and Testament to terminate the lease and the subsequent termination of the lease on August 9, 2019, extinguished any rights that Jill had as a third-party beneficiary. According to the defendants, the rights of any third-party beneficiary were revoked in accordance with LSA-C.C. art. 1979, when Leonce

---

[2] Any corporate resolutions of Economy Brick for the Act of Cancellation, which may or may not exist, have not been made a part of the record on the motions for summary judgment.

4

drafted his Last Will and Testament on August 22, 2013, five years before Jill attempted to manifest her intention to avail herself of the benefit.[3]

On March 21, 2022, Jill filed a cross motion for summary judgment, seeking enforcement of the Lease Agreement. Jill asserted that no authority existed for the termination of the lease and specifically alleged that Leonce's Last Will and Testament did not terminate the Lease Agreement. Therefore, Jill argued, pursuant to the specific and unequivocal terms of the Lease Agreement, as of July 1, 2018, she was entitled to receive, as a third-party beneficiary, certain rental payments from Economy Brick for a term of twenty years.

After a hearing on May 2, 2022, the trial court granted the motion for summary judgment filed by Dean and Michelle, in their capacity as co-executors in the succession proceeding, and by Economy Brick and Dean in the breach of contract suit. Additionally, the trial court denied Jill's cross motion for summary judgment. The trial court signed a judgment on May 17, 2022, in accordance with its ruling and dismissed all of Jill's claims with prejudice. Jill appealed, assigning as error the granting of the summary judgment that dismissed her claims and the denial of her cross motion for summary judgment.[4]

## DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La.App. 1 Cir. 7/18/18), 255 So.3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. It is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as

---

[3] Louisiana Code of Civil Procedure article 1979 provides, in pertinent part, that a "stipulation may be revoked only by the stipulator and only before the third party has manifested his intention of availing himself of the benefit."

[4] The denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by law. Where there are cross motions for summary judgment raising the same issues, however, this Court can review the denial of a summary judgment in addressing the appeal of the grant of the cross motion for summary judgment. **Huggins v. Amtrust Insurance Company of Kansas, Inc.**, 2020-0516 (La.App. 1 Cir. 12/30/20), 319 So.3d 362, 365. Thus, we review the denial of Jill's cross motion for summary judgment in conjunction with her appeal of the grant of the defendants' motion for summary judgment.

5

a matter of law. **Maggio v. Parker**, 2017-1112 (La. 6/27/18), 250 So.3d 874, 878. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Id**.

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. See LSA-C.C.P. art. 966(D)(1). The mover can meet his burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with his motion for summary judgment. See LSA-C.C.P. art. 966(A)(4).

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. **Maggio**, 250 So.3d at 878. Where the facts are undisputed and the matter presents a purely legal question, summary judgment is appropriate. **Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank**, 2021-00838 (La. 3/25/22), 339 So.3d 508, 517.

In support of their motion for summary judgment, the defendants submitted a copy of the Lease Agreement; Dean's affidavit, with exhibits; Michelle's affidavit, with exhibits; the affidavit of Robin Cheatham, with exhibits; the Last Will and Testament of Leonce; the Petition for Partial Possession; the Judgment of Partial Possession; the Act of Cancellation of the Lease Agreement; Jill's affidavit; and excerpts from Jill's deposition. In support of her cross motion for summary judgment and in opposition to the defendant's motion for summary judgment, Jill offered her affidavit, with exhibits; excerpts from her deposition; excerpts from Dean's deposition, with exhibits; and excerpts from Michelle's deposition. In granting summary judgment in favor of the

6

defendants and in denying Jill's cross motion for summary judgment, the trial court did not give any oral or written reasons for its ruling.

On appeal, Jill maintains that neither the terms of the Lease Agreement, nor any statutory law, provided any authority for Dean and Michelle to unilaterally terminate the lease and that the trial court legally erred in finding that Dean and Michelle had such authority. Jill further suggests that the trial court erred in finding that Leonce's Last Will and Testament gave Dean and Michelle the right to unilaterally and without cause terminate the lease. She avers that the plain reading of the Last Will and Testament does not terminate the Lease Agreement, that Leonce himself did not have the right to terminate the lease under Louisiana law, and, therefore, Leonce was unable and did not transfer any right to terminate the Lease Agreement upon his death. Jill argues that whether Leonce "intended" to terminate the lease is of no moment in light of the language of his Last Will and Testament.

The intent of the testator is the paramount consideration in interpreting the provisions of a will. See LSA-C.C. art. 1611(A). The function of the court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will. **In re Succession of Templet**, 2007-0067 (La.App. 1 Cir. 11/2/07), 977 So.2d 983, 986, writ denied, 2007-2329 (La. 2/1/08), 976 So.2d 720. Interpretation of a will is a question of law that this Court reviews on appeal to determine whether the trial court was legally correct. **Matter of Succession of Panaro**, 2017-1647 (La.App. 1 Cir. 8/9/18), 2018 WL 3826152, *2 (unpublished).

Precatory expressions are words requesting or praying that a thing be done. The law is clear that a testator's mere wishes and requests are viewed as precatory suggestions, which are not binding in law. **Succession of Acheé**, 2016-0716 (La.App. 1 Cir. 8/16/17), 229 So.3d 5, 9. However, the determination of testamentary intent does not rest solely on the testator's choice to use the words "would like," "want to," or "wish." There is no fixed rule that the use of particular words should be interpreted as precatory suggestions rather than as dispositions of property. See **In re Succession of White**, 2006-1002 (La.App. 1 Cir. 5/4/07), 961 So.2d 439, 442. Rather, the entire document must be read as a whole to determine whether the expression was intended

7

to be merely precatory or was intended by the testator to actually dispose of the property. **Succession of Acheé**, 229 So.3d at 9.

In this matter, in his Last Will and Testament, Leonce transferred, conveyed, and assigned to Dean and Michelle all of his "rights and obligations in, to, and under said Lease, including but not limited to the power to amend or terminate said Lease on behalf of the Lessor." Leonce further provided that it was his "desire" and he instructed Dean and Michelle to "consider" termination of the Lease upon his death.

While LSA-C.C. art. 1611 provides that the intent of the testator controls the interpretation of his testament, it also provides that "[i]f the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit." Leonce could have specifically stated in his Last Will and Testament that the lease would terminate upon his death, but he did not do so. He could have also instructed Dean and Michelle to terminate the lease when he died, but he did not do so. Rather, it was his "desire" to instruct Dean and Michelle to "consider" terminating the lease. Merriam-Webster's Dictionary and Thesaurus (2006) defines "desire" to mean "to long or hope for" or "request." Additionally, "consider" is defined to mean "to reflect on; think about with a degree of care or caution." Further, pursuant to the Last Will and Testament, Dean and Michelle were given the authority to amend the Lease Agreement, terminate it, or do nothing at all. The words used created uncertain situations and a variety of possibilities. Thus, we find that the words used by Leonce created precatory suggestions and are not binding. As such, based on our reading of the testament as a whole, we find that the trial court was legally incorrect in determining that the testament terminated the Lease Agreement. Instead, to give meaning to the words chosen by Leonce in his Last Will and Testament, we find that the Lease Agreement was not terminated.

Nevertheless, after the Judgment of Partial Possession, Dean and Michelle executed the Act of Cancellation in August of 2019. Jill argues that neither Leonce, nor Dean and Michelle, had the right to terminate the Lease Agreement as it is for a fixed, determinable term, and neither party reserved the right to terminate in the Lease Agreement.

8

Louisiana Civil Code article 2678 provides that a lease shall be for a term and that its duration may be agreed to by the parties or supplied by law. Article 2678 further provides that "[t]he term may be fixed or indeterminate. It is fixed when the parties agree that the lease will terminate at a designated date or upon the occurrence of a designated event. It is indeterminate in all other cases." A lease with a fixed term terminates upon the expiration of that term, without need of notice, unless the lease is reconducted or extended. LSA-C.C. art. 2720. A lease does not terminate by the death of the lessor or the lessee or by the cessation of existence of a juridical person that is party to the lease. LSA-C.C. art. 2717. Moreover, a lease in which one or both parties have reserved the right to terminate the lease before the end of the term may be so terminated by giving the notice specified in the lease contract or the notice provided in Articles 2727 through 2729, whichever period is longer. The right to receive this notice may not be renounced in advance. LSA-C.C. art. 2718. Further, contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. LSA-C.C. art. 1983.

In this matter, the Lease Agreement contains a fixed term and provides for termination only at the expiration of the term or upon default by the Lessee. The Lease Agreement does not contain a reservation of the right to terminate the lease before the end of the term. Nevertheless, Dean and Michelle, as lessors, and Economy Brick, as lessee, could certainly terminate the lease by the mutual consent of all parties. This right, however, was subject to any third-party beneficiary rights of Jill. Therefore, we must address whether the language of Leonce's Last Will and Testament, although insufficient to terminate the Lease Agreement, was sufficient to demonstrate a revocation of the third-party benefit.

Louisiana Civil Code article 1978 provides that a "contracting party may stipulate a benefit for a third person called a third-party beneficiary. Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." Further, the "stipulation may be revoked only by the stipulator and only before the third party has manifested his intention of availing himself of the benefit." LSA-C.C. art. 1979.

9

In Louisiana, such a contract for the benefit of a third-party is called a "stipulation *pour autrui.*" **Maggio**, 250 So.3d at 880. A stipulation *pour autrui* is never presumed. **Id.** The party claiming the benefit of a stipulation *pour autrui* bears the burden of proof. See **Joseph v. Hospital Service District No. 2 of Parish of St. Mary,** 2005-2364 (La. 10/15/06), 939 So.2d 1206, 1212. The Louisiana Civil Code recognizes that a third-party beneficiary contract can exist, but provides few governing rules. See LSA-C.C. arts. 1978-1982; **Joseph**, 939 So.2d at 1211. The code provides no analytic framework for determining whether a third-party beneficiary contract exists. Thus, the code has left to the jurisprudence the obligation to develop the analysis to determine when a third-party beneficiary contract exists on a case by case basis. Each contract must be evaluated on its own terms and conditions in order to determine if the contract stipulates a benefit for a third person. **Joseph**, 939 So.2d at 1211-12.

The criteria for determining whether contracting parties have provided a benefit for a third-party are: 1) the stipulation is manifestly clear; 2) there is certainty as to the benefit provided to the third-party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. **Maggio**, 250 So.3d at 880. In short, the most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third-party; absent such a clear manifestation, a party claiming to be a third-party beneficiary cannot meet his burden of proof. **Id.**

In this matter, it is clear that the language of the Lease Agreement created a stipulation *pour autrui* in favor of Jill. However, we must determine whether Leonce revoked the stipulation in favor of Jill during his lifetime. See LSA-C.C. art. 1979 ("The stipulation may be revoked only by the stipulator."). The only summary judgment evidence in the record that could possibly demonstrate a revocation of the stipulation before Leonce's death is his Last Will and Testament, dated August 22, 2013. If the language in the Last Will and Testament was sufficient to revoke the stipulation *pour autrui*, Jill's manifestation of her intent to avail herself of the stipulated benefits must have occurred prior to Leonce's execution of his testament. Further, because the right to revoke the third-party stipulation was a right personal to Leonce, there can be no revocation after his death. See LSA-C.C. art. 1979. Therefore, if Leonce's Last Will and

10

Testament was insufficient to evince a revocation of the stipulation, Jill's formal proof of claim on October 16, 2018, prior to the termination of the lease, clearly manifested her intention to avail herself of the stipulated benefits.

As previously stated, Article II of Leonce's Last Will and Testament provided that he transferred, conveyed, and assigned to Dean and Michelle all of his rights and obligations in, to, and under the Lease Agreement, including but not limited to the power to amend or terminate the lease on behalf of the lessor. The Last Will and Testament then stated: "It is my desire and I hereby instruct [Dean and Michelle] to consider termination of said Lease upon my death." The defendants maintain that this language revoked the third-party rights of Jill on August 22, 2013, when Leonce executed the Last Will and Testament, five years before Jill asserted her alleged rights to rental payments after Leonce's death on June 11, 2018.

To the contrary, Jill asserts that this language is insufficient to establish a revocation. We agree. Leonce acknowledged that the immovable property was subject to the Lease Agreement; however, the Last Will and Testament does not refer to the third-party stipulation set forth in the Lease Agreement. Leonce could have specifically revoked or stated that he wished to revoke the third-party stipulation. Further, he could have stated that the lease would terminate at his death. Rather, he chose not to mention the third-party stipulation at all or to state that the lease was terminated. Because Leonce's Last Will and Testament did not terminate the Lease Agreement, and because the words used by Leonce did not show a clear intent to revoke the benefit, we are unable to say that the language used in Leonce's Last Will and Testament provided for a revocation of the stipulation *pour autri*. Therefore, we find that the language of Leonce's Last Will and Testament was not only insufficient to terminate the Lease Agreement, but also insufficient to revoke the third-party stipulation in the Lease Agreement.

Consequently, if Jill manifested her intent to avail herself of the stipulated benefits in the Lease Agreement, pursuant to LSA-C.C. arts. 1978, the defendants may not

dissolve said contract without her consent.[5]  See **New Orleans Opera Association, Inc. v. Southern Regional Opera Endowment Fund**, 2007-1373 (La.App. 4 Cir. 8/27/08), 993 So.2d 791, 798, writ denied, 2008-2352 (La. 11/21/08), 996 So.2d 1114. Jill presented evidence that she had conversations with her father about the Lease Agreement, but could not remember specific dates.[6]  However, we need not consider these conversations, or the timing of same, having found that Leonce's Last Will and Testament did not revoke the stipulation and that Jill manifested her intent prior to the cancellation of the lease.[7]

Therefore, because Leonce's Last Will and Testament neither terminated the Lease Agreement, nor demonstrated a revocation of the third-party beneficiary stipulation, and because Jill manifested her intention to avail herself of the third-party stipulation before the cancellation of the lease, we find that the Lease Agreement contains a valid stipulation *pour autri*, entitling Jill to its third-party benefits.  Given that we have found Jill to be a third-party beneficiary, and given that the Lease Agreement cannot be dissolved without her consent as beneficiary, we find that the trial court erred in granting summary judgment in favor of the defendants and in in denying Jill's motion for summary judgment.[8]  Accordingly, we grant summary judgment in favor of Jill and remand the matter to the trial court for a determination of the amount of the third-party benefits that are due and owing to Jill.

---

[5] See also the Revision Comments -1984, Comment (b), to LSA-C.C. art. 1979, which provides:

> Under revised C.C. Art. 1978 (Rev.1984), ... the parties may not dissolve the contract after the third party has made known his intention to avail himself of the stipulation in his favor which it contains. Under this Article, that stipulation itself also may not be revoked once the beneficiary has manifested his intention to avail himself of it, even if the contract could survive without it.

[6] Jill maintains that she manifested her intention directly to Leonce before his death, after his death, and well before the termination of the lease. Jill refers to her interrogatory responses in which she stated that she "had conversations with [Leonce] prior to his death wherein he indicated that the lease agreement would pay out to her after his death. The exact date(s) of these conversations is not known." In her deposition, Jill testified that her father told her that she would receive payments from Economy Brick. When asked when that conversation occurred, Jill could not remember other than it was a "[l]ong time ago."

[7] The Revision Comments-1984, Comment (b) to Article 1978 state that "the beneficiary's intention to accept the benefit may be made known in any manner, even implied. The filing of suit is sufficient expression of such an intention." The filing of the Petition for Enforcement of Claim on July 15, 2019, in the succession proceeding, and the filing of the Petition for Breach of Contract in the separate lawsuit on July 29, 2019, also manifested Jill's intent to avail herself of the stipulated benefits.

[8] However, we recognize that pursuant to LSA-C.C. art. 1982 "[t]he promisor may raise against the beneficiary such defenses based on the contract as he may have raised against the stipulator."

## CONCLUSION

For the above reasons, we reverse the trial court's judgment that granted summary judgment in favor of the defendants, Dean J. Millet, Michelle Millet DePierri, and Economy Brick, and denied the motion for summary judgment filed by Jill Millet. We render summary judgment in favor of Jill Millet, finding her to be a third-party beneficiary of the Lease Agreement, and remand the matter for proceedings consistent with this opinion. Costs of this appeal are assessed equally between the defendants, Dean J. Millet and Michelle Millet DePierri, in their capacity as co-executors in the succession proceeding, and the defendant, Economy Brick, in the breach of contract suit.

**REVERSED, RENDERED, AND REMANDED.**